# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CHEARRIE D. BUCHAN,          )
                                      )
                  **Plaintiff,**       )
                                        )    **CIVIL ACTION**
**v.**                                    )
                                        )    **No. 10-4081-JWL**
                                        )
MICHAEL J. ASTRUE,         )
**Commissioner of Social Security,**   )
                                        )
                  **Defendant.**    )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.     Background

Plaintiff applied for DIB on May 17, 2005 alleging she has been disabled since September 28, 1999. (R. 637-43, 657). The application was denied in proceedings before the Commissioner, and in due course Plaintiff sought judicial review of the Commissioner's final decision. (R. 2-5, 657); see also Buchan v. Astrue, No. 08-4099-

JAR, 2009 WL 2176046 (D. Kan. July 21, 2009).[1]  On judicial review, a Magistrate Judge found that the Commissioner had erred in using Plaintiff's receipt of workers' compensation benefits to suggest that Plaintiff might not be motivated to work and had provided a weak credibility analysis with regard to Plaintiff's daily activities, and recommended that the district court remand for further proceedings.  (R. 699-702).  The district court adopted the Magistrate Judge's Report and Recommendation and remanded the case for further proceedings.  (R. 685-86).  On remand, the Appeals Council vacated the decision and remanded to an Administrative Law Judge (ALJ) for further proceedings consistent with the court's order.  (R. 708).  After remand, Plaintiff submitted additional medical evidence, and a second hearing was held before ALJ Guy E. Taylor.  (R. 710-988).  Plaintiff appeared with counsel at the hearing, and testimony was taken from Plaintiff and from a vocational expert (VE).  (R. 948-49).

On April 23, 2010, ALJ Taylor issued a decision in which he found that Plaintiff's date last insured (DLI) was March 31, 2005 and that although Plaintiff was unable to perform her past relevant work between September 28, 1999 and March 31, 2005, there were jobs that existed at that time in significant numbers in the national economy that Plaintiff was able to perform.  (R. 657-72).  Therefore, he found that Plaintiff was not disabled within the meaning of the Act between September 28, 1999, and March 31,

---

[1]Because the district court's decision in the prior case appears in the administrative record in this case, all further citation to that action will be to the record in this case.  (R. 685-702).

2005, and denied her application for disability insurance benefits.  Id. at 672.  Because the

Appeals Council did not assume jurisdiction thereafter, the ALJ's decision became the

final decision of the Commissioner after remand.  20 C.F.R. §§ 404.984, 416.1484 (2010)

(after federal court remand, ALJ's decision becomes final decision of the Commissioner

unless Appeals Council assumes jurisdiction); Lax v. Astrue, 489 F.3d 1080, 1082 (10th

Cir. 2007) (citing 20 C.F.R. §§ 404.984, 416.1484).  Plaintiff filed a complaint in this

court seeking judicial review, and the issue is now before the court.  (Doc. 1).

## II.  Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi,

422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048,

1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d

1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C.

§ 405(g)).  Section 405(g) of the Act provides for review of a final decision of the

Commissioner made after a hearing in which the Plaintiff was a party.  It also provides

that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by

substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine

whether the factual findings are supported by substantial evidence in the record and

whether the ALJ applied the correct legal standard.  Lax, 489 F.3d at 1084; accord, White

v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a

scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind

might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862

F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010)

4

(citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment, and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). <u>Williams</u>, 844 F.2d at 750-51.  If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses claimant's residual functional capacity (hereinafter RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  <u>Id.</u>

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform her past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  <u>Blea v. Barnhart</u>, 466 F.3d 903, 907 (10th Cir. 2006); <u>accord</u>, <u>Dikeman v. Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show jobs in the economy within Plaintiff's capability.  <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims that the ALJ failed to properly account for her fecal incontinence in his RFC assessment, failed to make a proper credibility determination, and failed to properly weigh the medical opinions and that, as a result of these errors, the ALJ's RFC assessment is also erroneous. The Commissioner argues that the ALJ properly considered Plaintiff's fecal incontinence, the medical opinions, and the credibility of Plaintiff's allegations, and consequently, his decision is proper. The court agrees with the Commissioner, and will address each issue raised.

As a preliminary matter, the court notes that both Plaintiff and the Commissioner agree with the ALJ's finding that Plaintiff's date last insured (DLI) for DIB was March 31, 2005. (Pl. Br. 1, n.1); (Comm'r Br. 2, n.2). As the Commissioner points out, in order to receive DIB pursuant to Title II of the Act, Plaintiff must show she was disabled before her DLI. Potter v. Sec'y of Health & Human Servs., 905 F.2d 1346, 1347 (10th Cir. 1990) (citing 20 C.F.R. § 404.130). While a claimant may be entitled to supplemental security income (SSI) payments under Title XVI of the Act for a condition which becomes disabling after her DLI for DIB, she may not receive Title II (DIB) benefits in such a case. Markham v. Califano, 601 F.2d 533, 536 (10th Cir. 1979) (affirming the ALJ's finding of Title XVI disability but not Title II disability where disabling severity was shown only after the DLI). Because Plaintiff here applied only for DIB and makes no claim for SSI, evidence regarding Plaintiff's condition after March 31, 2005 is relevant to the question of disability in this case only if it can be shown to establish that Plaintiff's

condition was of disabling severity before her DLI.  Therefore, the court will only consider evidence relating to the severity of Plaintiff's condition before March 31, 2005.

## III.    The Credibility Determination

Plaintiff's first allegation of error is that in his RFC assessment the ALJ failed to properly account for Plaintiff's fecal incontinence.  (Pl. Br. 44-48).  Plaintiff implies that the ALJ found Plaintiff does not have fecal incontinence; and argues that (1) the evidence establishes that Plaintiff's incontinence is a severe impairment within the meaning of the Act, that (2) the ALJ improperly discounted the credibility of her allegations and the allegations of her daughter, and that (3) the ALJ should have included in his RFC assessment a requirement that at unscheduled times in a workday Plaintiff would need to take breaks in addition to the customary two breaks and a lunch break.  Plaintiff's incontinence argument implicates the ALJ's analyses and findings regarding step two, regarding the credibility of Plaintiff's allegations, and regarding the ALJ's RFC assessment.  Because the ALJ's credibility determination affected both his step two finding and his RFC assessment with regard to Plaintiff's fecal incontinence, the court begins with consideration of the ALJ's credibility determination.

In addition to her argument that the ALJ improperly discounted her allegations and the allegations of her daughter with regard to incontinence, Plaintiff argues that the ALJ's credibility finding is erroneous for other reasons.  In this regard, she argues (1) that no physician ever stated that she was exaggerating, and that the ALJ erred:  (2) in discounting her credibility based upon an inconsistent work history with low earnings for

7

many years, (3) in discounting her daughter's letter, (4) in finding she had infrequent medical contacts after being released by Dr. Smith in July 2003, and (5) in improperly using a lack of evidence to support his findings.  The Commissioner argues that the ALJ applied the correct legal standard to his credibility determination, points to the ALJ's credibility analysis, and argues that substantial evidence supports the credibility determination.

In her reply brief, Plaintiff argued that some of the evidence cited by the Commissioner in support of the ALJ's credibility determination was evidence "which the ALJ has not shown that he considered."  (Reply 2).  She argued that the Tenth Circuit rejects attempts by the Commissioner to justify an ALJ's decision by citing to evidence not relied upon by the ALJ; that an "ALJ's decision should be evaluated based solely on the reasons and evidence stated in the ALJ's decisions;" and that post-hoc rationalizations such as the evidence cited by the Commissioner here may not be used to salvage an ALJ's decision.  Id. (citing Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168-69 (1962); Haga v. Astrue, 482 F.3d 1205 (10th Cir. 2007); Robinson v. Barnhart, 366 F.3d 1078, 1084-85 (10th Cir. 2004); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); and Ramirez v. Barnhart, No. Civ. A. 02-2261-KHV, 2003 WL 21105082, *6 (D. Kan. April 4, 2003)).

The Commissioner sought, and was granted, leave to file a surreply brief in order to address Plaintiff's argument regarding post hoc rationalization.  (Docs. 21, 22).  In his surreply brief, the Commissioner argued that an ALJ's decision must demonstrate that the

ALJ considered all of the evidence, but that an ALJ is not required to discuss every piece of evidence.  (Surreply 1) (citing Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996); Davis v. Apfel, 40 F. Supp. 2d 1261, 1267 (D. Kan. 1999)).  He argued that even though an ALJ is required to provide a narrative discussion describing how the evidence supports each RFC conclusion, he need not provide a citation to record evidence for each RFC limitation, and the court may not ignore relevant record evidence just because it was not specifically cited in the decision.  Id. at 2 (citing Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374 at *6 (D. Kan. April 4, 2011); Castillo v. Astrue, No. 10-1052-JWL, 2011 WL 13627 at *10-11 (D. Kan. Jan. 4, 2011)).  The Commissioner argued that the ALJ considered all of the record evidence and the Commissioner should be allowed to discuss any record evidence supporting the decision, and asks the court to consider all of the evidence in reaching its decision.  Before evaluating the credibility determination, the court will consider the parties' arguments regarding post-hoc rationalization.

**A.      Post Hoc Rationalization or Evidence Supporting the Decision?**

Plaintiff is correct in arguing that an ALJ's decision should be evaluated based solely upon the reasons stated in the decision.  Robinson, 366 F.3d at 1084.  A decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action.  Knipe, 755 F.2d at 149 n.16.  Nor may a reviewing court create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  By considering legal or evidentiary matters not considered by the

ALJ, a court risks violating the general rule against post hoc justification of administrative action.  <u>Allen</u>, 357 F.3d at 1145.  But, although a reviewing court "may not supply a reasoned basis for the agency's action that the agency itself has not given," it may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983) (quoting, respectively, <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196 (1947); and <u>Bowman Transp. Inc. v. Ark.-Best Freight Sys., Inc.</u>, 419 U.S. 281, 286 (1974)).

Moreover, the Commissioner is correct that the ALJ is not required to discuss every piece of evidence.  The record must demonstrate that the ALJ <u>considered</u> all of the evidence, but in addition to discussing evidence supporting his decision, the ALJ must discuss only the uncontroverted evidence he chooses not to rely upon, and significantly probative evidence he rejects.  <u>Clifton</u>, 79 F.3d at 1009-1010.  Further, Social Security Ruling (SSR) 96-8p, provides that the decision must include a narrative discussion describing how the evidence supports each conclusion in the ALJ's RFC assessment. West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2010).  Moreover, the question before the court on judicial review of a decision by the Commissioner is two-fold: whether the Commissioner applied the correct legal standard, and whether substantial evidence in the record supports the decision.  <u>E.g.</u>, <u>Wilson</u>, 602 F.3d at 1140; <u>Raymond v. Astrue</u>, 621 F.3d 1269, 1271 (10th Cir. 2009); <u>Poppa v. Astrue</u>, 569 F.3d 1167, 1169 (10th Cir. 2009); <u>Wall</u>, 561 F.3d at 1072; <u>Cowan v. Astrue</u>, 552 F.3d 1182, 1184-85 (10th Cir. 2008); <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008); <u>Lax</u>, 489 F.3d at 1084.

10

The parties' arguments regarding post hoc rationalization contain the information necessary to the resolution of this issue.  It is a practical impossibility for an ALJ's decision to discuss, summarize, or even cite all of the evidence in a record consisting of nearly one thousand pages, such as that presented in this case.  Therefore, as the Commissioner suggests, the decision must demonstrate that the ALJ considered all of the evidence, but the ALJ is not required to cite <u>all</u> of the evidence supporting each of his findings.  <u>Castillo</u>, 2011 WL 13627 at *10-11.  Moreover, as the court recognized in <u>Allen</u>, it would be improper for a reviewing court to consider evidentiary matters which were <u>not</u> <u>considered</u> by the ALJ.  However, a reviewing court may consider evidence which was actually considered by the ALJ even if that evidence was not cited in the decision.  <u>Thongleuth</u>, 2011 WL 1303374 at *6.  Nevertheless, as Plaintiff suggests, a reviewing court may not create post-hoc justifications or rely upon appellate counsel's post-hoc rationalizations to affirm the ALJ's decision.  The Commissioner's decision may be affirmed only "on the same basis articulated in the order by the agency itself."  <u>Burlington</u> <u>Truck Lines, Inc. v. United States</u>, 371 U.S. 156, 169 (1962) (citing <u>Chenery Corp.</u>, 332 U.S. at 196).  However, neither <u>Burlington Truck Lines</u>, <u>Chenery Corp.</u>, nor the other cases cited by Plaintiff suggest that an agency's decision must be supported only by evidence <u>cited</u> in the agency decision.  Rather, they require that the decision be evaluated based upon the rationale, bases, grounds, explanations, or reasons relied upon by the agency.  <u>Burlington Truck Lines</u>, 371 U.S. at 169 ("on the same basis articulated in the order by the agency"); <u>Chenery Corp.</u>, 332 U.S. at 196 ("solely by the grounds invoked by

the agency"); <u>Haga</u>, 482 F.3d at 1207 ("ALJ did not provide these explanations");

<u>Robinson</u>, 366 F.3d at 1084 ("decision should have been evaluated based solely on the

reasons stated in the decision"); <u>Allen</u>, 357 F.3d at 1142 (court relied "upon certain

analytical revisions offered on judicial review," and the "ALJ's decision cannot stand on

its own erroneous rationale"); <u>Ramirez</u>, 2003 WL 21105082, *6 (citing <u>Newton v. Apfel</u>,

209 F.3d 448, 455 (5th Cir. 2000)  ("decision must stand or fall with reasons set forth in

decision")).  Therefore, in evaluating the ALJ's decision, the court must first determine the

ALJ's rationale, bases, grounds, explanations, or reasons for the finding at issue, and then

determine whether substantial record evidence supports that finding and the rationale

relied upon.  If the Commissioner points to record evidence which was considered by the

ALJ and which supports the ALJ's rationale, the court will consider that evidence.

Nevertheless, if the Commissioner points to record evidence (even evidence which was

considered by the ALJ), and attempts to provide an <u>alternative</u> rationale in support of the

ALJ's finding, the alternative rationale is merely post-hoc rationalization which may not

be relied upon by the court to affirm the decision.  The court will first determine the

rationale relied upon by the ALJ in reaching his decision and will then consider whether

substantial evidence in the record supports the decision.  In making that determination, the

court will consider all record evidence which was considered by the ALJ.

### B.    The Credibility Standard

An ALJ's credibility determinations are generally treated as binding on review.

<u>Talley v. Sullivan</u>, 908 F.2d 585, 587 (10th Cir. 1990); <u>Broadbent v. Harris</u>, 698 F.2d 407,

413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder

of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602

F.3d at 1144; Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).  Therefore, in

reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on

matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir.

1994); but see Thompson, 987 F.2d at 1490 ("deference is not an absolute rule").

"However, '[f]indings as to credibility should be closely and affirmatively linked to

substantial evidence and not just a conclusion in the guise of findings.'"  Wilson, 602 F.3d

at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988); Hackett, 395

F.3d at 1173 (same).

        The Tenth Circuit has explained the analysis for considering subjective testimony

regarding symptoms.  Thompson, 987 F.2d at 1488 (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to
> establish disability.  Before the ALJ need even consider any subjective
> evidence of pain, the claimant must first prove by objective medical
> evidence the existence of a pain-producing impairment that could reasonably
> be expected to produce the alleged disabling pain.  This court has stated:
> The framework for the proper analysis of Claimant's evidence of pain is set
> out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We must consider
> (1) whether Claimant established a pain-producing impairment by objective
> medical evidence; (2) if so, whether there is a "loose nexus" between the
> proven impairment and the Claimant's subjective allegations of pain; and
> (3) if so, whether, considering all the evidence, both objective and
> subjective, Claimant's pain is in fact disabling.

Id. (citations and quotation omitted).

In evaluating symptoms, the court has recognized a non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66; see also 20 C.F.R. § 404.1529(c)(3).  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489.

The regulations suggest relevant factors in evaluating credibility which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).

### C.     The ALJ's Credibility Findings

The ALJ's credibility analysis spanned more than six pages of his decision.  (R. 662-68).  He noted that Plaintiff's "disability insured status had expired about 2 months before she made her initial disability allegations" in her application for DIB in May 2005.  (R. 662).  He summarized certain evidence relevant to his credibility evaluation and quoted the applicable legal standard as presented in Thompson.  (R. 662-64).  The ALJ's decision included his credibility analysis within his RFC assessment, and he stated that he

had assessed Plaintiff's RFC "[a]fter careful consideration of the entire record."  (R. 661).

He summarized the factors used in evaluating credibility, and noted that Plaintiff has the

burden of proof regarding her allegations of symptoms.  (R. 664-65) (citing 20 C.F.R.

§ 404.1529; and Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991)).  Finally, he

stated his analysis and the explanation of his credibility determination (R. 665-68), and

concluded that "[a]fter careful consideration of the evidence," he found Plaintiff's

allegations "concerning the intensity, persistence and limiting effect of these symptoms are

not fully credible . . . to the extent they are inconsistent with the [ALJ's] residual

functional capacity assessment."  (R. 668).

The ALJ stated eleven reasons for discounting Plaintiff's allegations:  (1) Plaintiff's

statements "are somewhat extravagant and inconsistent in their formulations."  (R. 665).

(2) Plaintiff's statements regarding bowel incontinence are directly contradicted by her

contemporaneous reports.  Id.  (3) Dr. O'Brien concluded in June, 2003 that, "At th[is]

moment the incontinence is not that symptomatic to her."  Id. (quoting Ex. F/221 (R. 370))

(brackets added to correct the ALJ's misquote).  (4) Plaintiff's testimony that a doctor in

Kansas City (Dr. O'Brien) told her further surgery would just make her fecal incontinence

worse is contrary to Dr. O'Brien's report that surgery "probably offers a success rate of

70-75%."  (R. 665-66) (quoting (R. 370)).  (5) Dr. Rockefeller's treatment records from

February 10, 2003 through November 24, 2003 contain no report of fecal incontinence. (R.

666).  (6) Plaintiff's inconsistent work history with very low earnings posted for many

years suggests poor motivation to work.  Id.  (7) Plaintiff reported to her doctor that she

had been out of work since 1999 "'just doing the usual things around the house,' and that she 'she [sic] sits all day watching TV.'" Id.  (8) Dr. Smith released Plaintiff to return to work with a fifteen pound lifting restriction on July 23, 2003.  (R. 667).  (9) Plaintiff's medical contacts were infrequent prior to the expiration of her insured status on March 31, 2005.  Id.  (10) Including sporadic chiropractic treatment, there was a period of over a year between August 9, 2004 and October 7, 2005 when Plaintiff received medical treatment only once.  Id.  (11) Plaintiff's statements that her back goes out on a daily basis, and when it does she is "pretty much down for a week or two," presents an impossible time line.  (R. 668) (emphasis added).

The ALJ also considered a letter from Plaintiff's daughter, Jennifer Hiegert, found it not credible, and gave it limited weight.  (R. 667-68) (citing Ex. E/8-9 (R. 131-32)).  He discounted the letter because it was somewhat exaggerated, was sympathetic to Plaintiff, was nonspecific regarding dates, and was dated after Plaintiff's insured status expired.  Id.

**D.   Analysis**

Plaintiff's argument with regard to fecal incontinence makes it clear that Plaintiff has a different view of the evidence than does the ALJ.  She points to evidence of hemorrhoids, polyps, cysts, fistula, and fistulotomy (Pl. Br. 44); surgeries by Dr. Thomas and Dr. Steward, and referral to and examination by Dr. O'Brien; and she argues that "the ALJ appears to believe that Plaintiff's bowel incontinence problems have been cured."  Id. at 44-45.  Plaintiff cites various reports she completed and provided to the Social Security Administration wherein she reported symptoms resulting from bowel incontinence.  Id. at

45.  Plaintiff recognized the ALJ's finding that Dr. Rockefeller's notes between February and November 2003 did not mention fecal incontinence, and argued that nonetheless, "Plaintiff's bowel incontinence persisted."  (Pl. Br. 46).

However, Plaintiff does not establish that her view of the evidence is the only view which the record supports.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted).  Moreover, the ALJ recognized that fecal incontinence is one of Plaintiff's medically determinable impairments even though he determined it was not a "severe" impairment.  (R. 660).  The mere presence of an impairment, however, is insufficient to establish a severe impairment.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997) (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).

Plaintiff does not point to evidence contrary to the ALJ's credibility reasons 2 through 5 (regarding fecal incontinence).  Her reports to the agency of disabling symptoms are the very subject of the ALJ's credibility evaluation, and as such, do not by themselves require a finding that Plaintiff's allegations are credible.  Plaintiff points to Dr. Rockefeller's records and reports dated after her date last insured, and argues that they constitute evidence that Plaintiff's fecal incontinence is severe and that Plaintiff's

allegations in that regard are credible.  However, as discussed above, Plaintiff's condition

after her DLI is irrelevant to determining eligibility for DIB.

Plaintiff also claims that the ALJ erroneously considered the third-party letter from

her daughter.  She does not, however, argue that the reasons given by the ALJ to discount

the letter are erroneous.  Rather, she argues that testimony from lay witnesses, such as

family members, who see Plaintiff every day should be given great weight.  (Pl. Br. 47)

(citing Smolen v. Chater, 80 F.3d 1273 (9th Cir. 1996); Dodril v. Shalala, 12 F.3d 915,

919 (9th Cir. 1993); Gay ex rel. McBride v. Heckler, 583 F. Supp 499 (N.D. Ga. 1984).

Nonetheless, a fair reading of the letter supports the ALJ's finding that it was somewhat

exaggerated, was sympathetic to Plaintiff, was nonspecific regarding dates (thereby

precluding an inference relative to Plaintiff's DLI), and was dated after Plaintiff's insured

status expired.  (R. 131-32).  Moreover, the argument Plaintiff urges does not appear to be

supported by the record, because there is no record evidence that Ms. Hiegert sees her

mother every day.  In fact, the letter relates an incident which happened "[o]n one of my

last trips home," thereby indicating Ms Hiegert does not see Plaintiff every day because

she must make a "trip home" to see her mother.  The cases cited by Plaintiff are neither

controlling precedent nor helpful in the circumstances of this case.

Plaintiff's other arguments regarding the ALJ's credibility finding are equally

unavailing.  She is correct when she points out that no physician has ever stated she was

exaggerating.  (Pl. Br. 48).  However, the ALJ did not find otherwise.  Further, the court is

aware of no requirement that Plaintiff's allegations of symptoms must be found credible if

no physician has ever stated she was exaggerating. Plaintiff's statement is merely an invitation to the court to reweigh the evidence and make a <u>de novo</u> credibility finding. In fact, all of Plaintiff's remaining allegations regarding the ALJ's credibility determination amount to little more than an assertion that the evidence should be seen as viewed by Plaintiff and should be held to support a finding that Plaintiff's allegations are credible. Plaintiff points to evidence tending to provide a different nuance to several of the reasons given by the ALJ for discounting Plaintiff's allegations, and argues that the court should find the ALJ's reasons are unsupported by the record. The court may not do so. As discussed above, the court may not reweigh the evidence or substitute its judgment for that of the Commissioner. <u>Bowman</u>, 511 F.3d at 1272 (quoting <u>Casias</u>, 933 F.2d at 800); <u>accord</u>, <u>Hackett</u>, 395 F.3d at 1172.

The court's review of the Commissioner's credibility finding is deferential. Here the ALJ provided eleven reasons to discount Plaintiff's allegations and three reasons to discount the allegations of her daughter. Those reasons are supported by substantial evidence in the record which was considered by the ALJ, and establish that the ALJ has affirmatively linked his credibility finding to the evidence. Moreover, a credibility assessment requires consideration of all of the factors "in combination" <u>Huston</u>, 838 F.2d at 1132 n.7, and any deficiency found to result from a failure to take a more nuanced view with regard to any individual reason is overcome by the sheer weight of the combination of evidence and rationale provided by the ALJ. The court finds no error in the ALJ's credibility finding.

Having found no error in the ALJ's credibility finding, the court finds that the question of whether the ALJ erred at step two in finding that fecal incontinence is not a "severe" impairment is controlled by the opinion of Magistrate Judge Cohn which was adopted by Judge Robinson in <u>Buchan v. Astrue</u>, No. 08-4099-JAR before the case was remanded. (R. 685, 692-95). The court quotes the last paragraph of that step two analysis:

> In <u>Brescia v. Astrue</u>, 287 Fed. Appx. 626, 628-29 (10th Cir. July 8, 2008), the court held that once an ALJ has found at least one severe impairment, a failure to designate another impairment as "severe" does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Again, in <u>Hill v. Astrue</u>, 289 Fed. Appx. 289, 291-292 (10th Cir. Aug. 12, 2008), the court held that the failure to find additional impairments are severe is not cause for reversal so long as the ALJ considers the effects of all of the claimant's medically determinable impairments, both those he finds "severe" and those "not severe." Here, the ALJ specifically noted that he had considered plaintiff's "non-severe" impairments "in the combination of impairments." (R. 11). The court finds no error at step two.

(R. 695). As he did in his first decision, the ALJ here noted that although he found Plaintiff's incontinence not severe, he had considered it in Plaintiff's combination of impairments. (R. 660). Thus, there was no step two error. The court will consider whether the ALJ properly accounted for Plaintiff's fecal incontinence when it considers the propriety of the RFC assessment.

## IV.   Treating Source Medical Opinions

Plaintiff claims the ALJ erred in weighing medical opinions of two treating source physicians: (1) by according "controlling weight" to Dr. Smith's opinion and (2) by according only "some weight" to Dr. Rockefeller's medical opinion. (Pl. Br. 53-56).

Specifically, she argues that it was error to accord "controlling weight" to Dr. Smith's opinion because the ALJ found that opinion is inconsistent with other substantial medical evidence.  Id. at 53.  Plaintiff claims the ALJ erred in weighing Dr. Rockefeller's opinion because he did not recontact Dr. Rockefeller for clarification; misunderstood "words of art" used by Dr. Rockefeller; erroneously preferred Dr. Smith's opinion to Dr. Rockefeller's opinion; and relied upon his own medical speculation.  Id. at 54-56.

The Commissioner argues that the ALJ properly considered the medical opinions. (Comm'r Br. 6-11).  He argues that the evidence which the ALJ found inconsistent with Dr. Smith's opinion was not "substantial," and in any case it is the ALJ's duty to resolve conflicting evidence.  Id. at 6.  The Commissioner argues that the ALJ properly discounted Dr. Rockefeller's opinion and supported his reasoning by citation to substantial evidence in the record.  Id. at 7-11.  Finally, he argues that there was no need in the circumstances to recontact Dr. Rockefeller. Id. at 11.

### A.    Standard for Evaluating Treating Source Opinions

A physician who has treated a patient frequently over an extended period of time is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p).  The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'"  Id. at 1300 (quoting

SSR 96-2p).  If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record.  Id.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

If the treating source opinion is not given controlling weight, however, the inquiry does not end.  Id.  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527."  Id.  Those factors are: (1) length of treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. § 404.1527(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the regulatory factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion.  Id. 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."  Id.  (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

SSR 96-2p, cited by the court in <u>Watkins</u>, explains that "substantial evidence" when determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Court in <u>Richardson v. Perales</u>, 402 U.S. 389 (1971).  SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2010).  As the Ruling explains, evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion."

### B.      The ALJ's Evaluation of the Treating Source Opinions

In assessing Plaintiff's RFC, the ALJ specifically evaluated the opinion evidence, including the treating source opinions of Dr. Smith and Dr. Rockefeller.  (R. 668-70).  The ALJ recognized Dr. Rockefeller is a treating physician, and summarized his opinion contained in forms completed October 5, 2007, March 12, 2008, and February 23, 2010:

> In support of this theory [of the case], Mr. Tilton[, claimant's attorney,] narratively summarized physical functional limitations indicated on a disability form completed by the claimant's treating physician, Dr. Rockefeller, on October 7, 2007, which sets out the claimant's <u>current</u> limitations, at a point that is about 1 1/2, years after the date last insured, March 31, 2005.  (Ex. F/414-417) [(R. 163-66)].  Mr. Tilton subsequently attempted to cure this deficiency by obtaining another statement from Dr. Rockefeller, dated March 12, 2008, in which the doctor related the same limitations to "at least as far back as November 4, 2003," with the explanation for this being, "As indicated in my [attached] treatment note for that date, 'She continues to have neck pain.  This is quite chronic and debilitating.'"  (Ex. F/437-438) [(R. 142-43)].  On February 23, 2010, Mr. Tilton submitted another statement from Dr. Rockefeller, dated February 21, 2010, which was motivated by there "[m]ost recently [having] been some question of increased disability to fecal incontinence."  Dr. Rockefeller related this development to the institution of Metformin in 2007, however, and possibly to her past surgeries.  As discussed above, however, the

medical evidence shows the claimant denied and/or did not complain of bowel incontinence during the period from her visit to Dr. O'Brien in June 2003, to well after the expiration of her insured status.  (Ex. F/572-73) [(R. 946-47)].

(R. 668-69) (underline in original).[2]

The ALJ found that Dr. Rockefeller's opinion is neither well-supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the record, and determined it cannot be accorded controlling weight.  (R. 669).  He then weighed the opinion in accordance with the regulatory factors and determined to accord it "some weight but only to the extent [it is] consistent with the residual functional capacity defined above."  (R. 669).  He discounted Dr. Rockefeller's opinion because (1) it is not well-supported and (2) it is not consistent with other substantial record evidence; (3) each opinion provided by Dr. Rockefeller facially assesses Plaintiff's limitations on the date the opinion was completed which is after Plaintiff's date last insured in each case; Dr. Rockefeller's statement that the limitations apply "at least as far back as November 4, 2003" (4) is equivocal and vague, and (5) does not relate a significant medical event suggesting the beginning of the limitations; the November 4, 2003 treatment notes to which Dr. Rockefeller refers in support of the limitations asserted does not support the limitations because (6) when considered as a whole, the note is equivocal, and (7) the note does not indicate any specific functional limitations; (8) during

_____

[2]Although the decision states that Dr. Rockefeller's first form was completed on October 7, 2007 (R. 669-70), the form is actually dated October 5, 2007.  (R. 166).

a two-year period in which Dr. Rockefeller's allegedly retrospective opinion purportedly applied (November 4, 3003 through November 15, 2005) there is no evidence that Dr. Rockefeller even treated Plaintiff, and when she returned she did not relate any of the disabling limitations suggested in Dr. Rockefeller's opinion, but complained merely of a two-month history of low back pain and symptoms of right radiculopathy; (9) Dr. Rockefeller's opinion is clinically unsupported, rendering it little more than a conclusory opinion of disability; and (10) Dr. Rockefeller's opinion is inconsistent with Dr. Smith's opinion that Plaintiff could work with only a fifteen pound lifting restriction.  (R. 669-70).

The ALJ also evaluated Dr. Smith's opinion:

> Dr. Smith also is a treating physician with an orthopedic surgery specialty, and his opinion is supported by a functional capacity evaluation.  (Ex. F/128) [(R. 463) (returned to regular duty on 072303 with permanent light lifting restrictions)].  Although the two dates, July 23, 2003 and November 4,2003, do not overlap, they are only a few months apart, and Dr. Smith's opinion is more consistent with the claimant's subsequent history of medical treatment, or dearth thereof, for musculoskeletal complaints through the date last insured.  The undersigned finds no reason why Dr. Smith's opinion should not be accorded controlling weight for the period in question through July 23, 2003, as to (a) the claimant's inability to perform her past work, and (b) her inability to perform the full range of light work.  Although Dr. Smith gave her work excuses for over a year from her job with Duffens Optical, he did not specifically assign functional limitations that would preclude work within the residual functional capacity defined above.

(R. 670).

### C.    Analysis

Plaintiff's argument that the ALJ erred in according "controlling weight" to Dr. Smith's opinion is without merit.  To be sure, the ALJ found the opinion of the state

agency medical consultant is inconsistent with Dr. Smith's opinion, and such an inconsistency is sufficient to withhold controlling weight pursuant to SSR 96-8.  However, the court does not read the ALJ's decision so broadly as does Plaintiff.  Although the ALJ used the term "controlling weight" in referring to Dr. Smith's opinion, that usage was significantly limited, for the ALJ stated Dr. Smith's opinion was given "controlling weight" only as to Plaintiff's "inability to perform her past work," and "her inability to perform the full range of light work."  (R. 670).  Thus, the ALJ accepted Dr. Smith's opinion (accorded it "controlling weight") only to the extent that he found that Plaintiff could not perform her past relevant work and that she could not perform the full range of light work.  This is a far cry from the concept of according "controlling weight" to a treating source's opinion as suggested in the Social Security regulations and rulings.  20 C.F.R. § 404.1529(d)(2) (when a treating source opinion is accorded controlling weight, the remaining regulatory factors need not be considered, and other medical opinions need not be weighed); SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111 (Supp. 2010) (if a treating source opinion is well-supported and not inconsistent "it must be given controlling weight; i.e., it must be adopted").

In contrast to Dr. Smith's opinion, the ALJ assessed Plaintiff with the RFC "to perform a limited range of <u>sedentary</u> work," and found that she could lift and carry only up to <u>ten</u> pounds (R. 661) (emphasis added), whereas Dr. Smith opined that Plaintiff could lift up to <u>fifteen</u> pounds (a limited range of <u>light</u> work).  (R. 470).  Thus, the record is clear that the ALJ accepted only Dr. Smith's opinions that Plaintiff must perform less than the

26

full range of light work, and that she cannot perform her past relevant work.  In context, the significance of the ALJ's finding with regard to Dr. Smith's opinion is (1) that Dr. Smith's opinion was more consistent with the contemporaneous record evidence than was Dr. Rockefeller's opinion, (2) that Dr. Smith did not assign functional limitations more restrictive than the RFC assessed by the ALJ, and (3) that Dr. Smith's opinion justifies according no weight to the state agency medical consultant's opinion.  Consistent with the court's view of the ALJ's assessment is the fact that the ALJ explained in his decision the weight he gave to the opinion of the state agency medical consultant.  (R. 670).  The regulations require that an ALJ explain the weight given the opinions of state agency consultants only where a treating source opinion is <u>not</u> given controlling weight.  20 C.F.R. § 404.1527(f)(2)(ii) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant.").  The fact that the ALJ explained the weight accorded the opinion of the state agency consultant implies that the ALJ understood that he did not accord "controlling weight" to Dr. Smith's opinion in the sense that "controlling weight" is ordinarily used in the regulations and rulings.  Although the ALJ could have been more judicious in the terminology used, the court finds no error in the ALJ's weighing of Dr. Smith's opinion.

Plaintiff claims the ALJ "zero[ed] in on the words 'reasonably well,'" when discussing Dr. Rockefeller's assertion that Plaintiff's condition was disabling at least since November 4, 2003, and argues that the term "reasonably well" is a "word of art" which is

27

"meaningless without a frame of reference."  (Pl. Br. 55) (citing Gade v. Sullivan, 956 F.2d 791, 194 (8th Cir. 1992); Fleshman v. Sullivan, 933 F.2d 674, 676 (8th Cir. 1981)).[3] The court is unable to discern Plaintiff's "word of art" argument from the cases cited in Plaintiff's brief.  In neither case did the Eighth Circuit suggest that the ALJ had mistakenly considered "words of art" without a proper frame of reference.  In Gude, the court noted that the ALJ had relied upon statements in the physician's treatment notes which the ALJ believed minimized plaintiff's symptoms, but the court found that the physician's conclusions were "well supported by the medical evidence in the record, and there is no contrary medical evidence."  Gude 956 F.2d at 793 (emphasis added).  Similarly in Fleshman, the court saw "no justification for the ALJ's disregarding the record which clearly indicates the pain and suffering Mrs. Fleshman experienced . . . and the medications she took."  933 F.2d at 676.  The Fleshman court ultimately found that the record evidence pointed but one direction and remanded for immediate award of benefits rather than further proceedings.  Id.  Here, the ALJ did not ignore the record evidence and did not discount Dr. Rockefeller's opinion without justification.  Rather, he considered all of the evidence and explained his conclusion that Dr. Rockefeller's statement that the limitations apply "at least as far back as November 4, 2003" is equivocal and vague, does not relate a significant medical event suggesting the beginning of the limitations, does not

---

[3]The correct citations are:  Gude v. Sullivan, 956 F.2d 791, 794 (8th Cir. 1992); Fleshman v. Sullivan, 933 F.2d 674, 676 (8th Cir. 1991).

support the limitations because when considered as a whole, the note is equivocal, and the treatment note does not indicate any specific functional limitations.

Much of the evidence Plaintiff relies upon in support of Dr. Rockefeller's opinions relates to Plaintiff's condition after her date last insured.  (Pl. Br. 53, 56).  But, the ALJ discounted Dr. Rockefeller's opinion, in part, specifically because it related to Plaintiff's condition after her date last insured.  (R. 669).  Moreover, as discussed above, Plaintiff seeks only DIB and her condition after her DLI is irrelevant to disability under Title II.

Plaintiff views the ALJ's finding that Dr. Rockefeller's opinion is equivocal as a finding that the opinion is ambiguous, and argues that the ALJ had a duty to recontact Dr. Rockefeller for clarification.  (Pl. Br. 54).  Plaintiff's specific argument is that the ALJ must recontact the treating physician when the evidence does not support the physician's opinion "and the adjudicator cannot ascertain the basis of the opinion from the case record."  (Pl. Br. 54) (quoting SSR 96-5p).  Contrary to Plaintiff's argument, the ALJ was able to ascertain the basis of Dr. Rockefeller's opinion from the case record, and decided that the opinion was equivocal.  The Tenth Circuit has explained the circumstances under which a treating source must be recontacted:

> If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available.  See 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."); see also McGoffin[ v. Barnhart],

288 F.3d [1248,] 1252 [(10th Cir. 2002)] (holding ALJ had obligation to recontact treating physician if validity of his report open to question).

Robinson, 366 F.3d at 1084.

Here, the ALJ considered the record evidence from Dr. Rockefeller and determined that Dr. Rockefeller had not treated Plaintiff for two years between November 4, 2003 and November 15, 2005, and that when Plaintiff returned for treatment she reported only a two-month history of low back pain and symptoms of right radiculopathy.  (R. 669) (citing Ex. F/332 (R. 248)); see also (R. 249) (p.2 of treatment note dated 11/15/05) (Plaintiff told by Dr. Rockefeller, "She should followup on a routine basis for general health care maintenance issues.").  Therefore, the evidence from Dr. Rockefeller was adequate to make a proper determination, there was no additional evidence necessary, and the ALJ was able to resolve any potential ambiguity or conflict in the opinion based upon the evidence provided by Dr. Rockefeller.  In the circumstances, Plaintiff has not shown that the ALJ should have recontacted Dr. Rockefeller.

**V.     RFC Assessment**

Plaintiff asserts the ALJ's RFC assessment was erroneous because it relied upon an erroneous credibility determination, an erroneous evaluation of the treating source opinions, and an erroneous determination that Plaintiff's fecal incontinence is not a "severe" impairment.  (Pl. Br. 57).  Plaintiff also makes the argument that the ALJ should have included in his RFC assessment a requirement that at unscheduled times in a workday Plaintiff would need to take breaks in addition to the customary two breaks and a

lunch break.  (Pl. Br. 47-48).  However, as discussed above, the ALJ properly found that Plaintiff's allegations of symptoms resulting from her impairments are not fully credible. Further, the ALJ properly discounted Plaintiff's daughter's letter, and Dr. Rockefeller's equivocal assertion that Plaintiff's fecal incontinence was related to either Plaintiff taking Metformin beginning in 2007, or to her surgeries in 2002 or 2003.  Having failed to establish the predicate bases for her alleged need for additional breaks, Plaintiff cannot show that additional breaks are necessary.

As this opinion establishes, Plaintiff has shown no error in the credibility determination, in the evaluation of Plaintiff's fecal incontinence, or in the evaluation of the treating source opinions.  Therefore, she has also failed to establish error in the RFC assessment.  The court finds Plaintiff has shown no error in the Commissioner's decision in this case.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 24th day of August 2011, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**

31